GEORGE S. VAN SCHAICK, Superintendent of Insurance of the State of New York, as Liquidator of the EQUITABLE CASUALTY AND SURETY COMPANY, Appellant, v. A. PAUL LOSHEN, Respondent.

First Department, February 23, 1934.

*Abraham J. Halprin* of counsel [*Alfred C. Bennett*, attorney], for the appellant.

*William Weisman* of counsel [*David Gellar* with him on the brief; *William Weisman*, attorney], for the respondent.

MARTIN, J. The Superintendent of Insurance, as liquidator of the Equitable Casualty and Surety Company, brought this action to recover the sum of $7,825.

The complaint alleges that the Equitable Casualty and Surety Company was the owner of two mortgages, one for $65,000 covering property at 1784–1790 Atlantic avenue, Brooklyn; the other for $65,000 covering premises at 59–65 Goerick street, Manhattan; that the defendant, an attorney at law, collected on account of the mortgages, installments of principal and interest, the sum of $7,825 from November 29, 1929, to August 8, 1930, during which time the mortgages were owned by the Equitable Casualty and Surety Company. It is then alleged that the plaintiff, as liquidator of the Equitable Casualty and Surety Company, became entitled to possession of the property and assets of that company and demanded that the defendant pay over the above sum. The demand was refused.

The defendant, by answer, admitted that he received the sum of $7,825, as alleged in the complaint. As an affirmative defense, however, he alleged that he was a stockholder of the Equitable Realty and Service Corporation; fifty per cent of all the capital stock of that corporation was owned by the Equitable Financial Corporation; that prior to November 29, 1929, in consideration of his agreement to relinquish to the Equitable Financial Corporation all his stock in the Equitable Realty and Service Corporation, the Equitable Realty and Service Corporation agreed that the defendant should receive and collect all sums that might thereafter be paid on account of the principal and interest of the mortgages until he received the sum of $12,500, and that the moneys alleged to be due in the complaint were collected by him pursuant to that agreement.

Due to the unusual or novel claim here involved it is necessary, for the purpose of clarity, to quote a part of the testimony of the defendant offered in support thereof. In this testimony he sets forth the alleged agreement which he claims entitles him to keep the money which he collected on the mortgages.

" By the Court: Q. Tell the conversation specifically. A. I told Mr. Spielberg that I had been with the company since its inception, that I had invested my money and did all of the work of the Equitable & Realty Corp., that I did all the work and spent most of my days there for a period of several months,

that I was the only stockholder in the Equitable Realty & Service, aside from Equitable Financial, that Mr. Friedman and Mr. Miller had received their moneys and the Equitable Financial had received their stock, that I thought it was only fair and right that I should receive my stock investment back. By the Court: Q. From what? A. From the Realty Co., the moneys that I invested, that the Financial should buy my stock also as they did the stock of Friedman and Miller.

" Mr. Spielberg agreed that I was entitled to it and commended me, I think, for the time that I spent and the work that I did. He told me that the difficulty was that due to the market break and general conditions, they were in need of money themselves and they could not spare the money. He then asked me, I believe, what there was left of the Realty Co. and I told him just two mortgages by Witkin and Levine — I think I told him the amount, I don't know — we must have discussed the amount; and he suggested that a good way out of the situation would be that I would take the first moneys that come in from these mortgages and apply it on account of my investment and in that way liquidate my investment and if the mortgages were paid sooner or if he could arrange it sooner, he would pay me whatever the balance was, sooner."

The defense interposed by the defendant to this action, as set forth in the answer and by his own testimony as stated above, is based upon an alleged oral agreement entered into through one Spielberg for the retention by the defendant of all payments made on two mortgages, which were not, at the time of the agreement, owned by Spielberg, but were the property of a corporation in which he was an officer. Some time after the alleged agreement between Spielberg and the defendant, the two mortgages in question were assigned in writing by the corporate owner and the title thereto vested and remained in the corporate assignee until they were paid.

In contradiction of the claim of the alleged oral agreement we have the testimony of Spielberg, who says he does not remember any such arrangement and calls attention to facts which are clearly inconsistent with and disprove such an agreement. Spielberg, at the time the alleged agreement is said to have been entered into, did not own the mortgages; they were the property of a corporation and were so owned when the money now sued for by the plaintiff was paid to the defendant. It is claimed that if any such agreement was made, it could not bind the corporation and that all the facts prove how improbable it is that any such agreement was made, including the story of an alleged loan of $2,000.

We must not overlook the fact that there are three corporations with the name "Equitable" involved herein. The Equitable Casualty and Surety Company, of which the plaintiff is liquidator, has never had any connection with the other two companies. All three companies were engaged in different kinds of business as is indicated by their names and all were separate and distinct entities. The Equitable Financial Corporation originally owned fifty per cent of the capital stock of the Equitable Realty and Service Corporation. The defendant and two other stockholders each owned one-sixth of the stock. At the time of the alleged agreement the other two stockholders had sold their interests so that the Equitable Financial Corporation and the defendant were the only stockholders. The purpose of the agreement, according to the defendant, was to place all of the stock of the Equitable Realty and Service Corporation in the possession of the Equitable Financial Corporation.

To prove the allegations of the complaint, two bonds and mortgages were offered in evidence by the plaintiff, each in the principal sum of $65,000 running to the Equitable Realty and Service Corporation, as mortgagee, as well as various assignments of the mortgages, the last two of which were to the Equitable Casualty and Surety Company, dated December 27, 1929. The plaintiff then placed in evidence nine checks totaling $7,825, representing the payments on the two mortgages, all of which bore the indorsement of the defendant. The witness Witkin testified, on behalf of the plaintiff, that the checks totaling $7,825 represented payments of interest made by the mortgagors on these two mortgages.

In support of his affirmative defense the defendant testified as set forth above, claiming that he entered into an oral agreement in November, 1929, through Spielberg, who at that time was the president of the Equitable Financial Corporation and chairman of the board of the Equitable Casualty and Surety Company.

Upon the trial it was proved that $2,000 of the amount received by the defendant was turned over to the Equitable Financial Corporation, so that the plaintiff's claim was thus reduced by consent to $5,825. The appellant says that it is important to note that although the defendant collected more than the amount of his investment he did not turn over the stock to the Equitable Financial Corporation or to Spielberg, as he says he agreed to do, which fact is wholly inconsistent with the alleged agreement.

The agreement is said to have been entered into prior to the assignment of the mortgages to the Equitable Casualty and Surety Company, which assignments were absolute on their face and transferred the entire interest therein, and no objection appears

to have been made at that time by the defendant or by any of the parties.

The defendant failed to account for the fact that at the time he claims to have owned an interest in these mortgages the title to which was in the Equitable Realty and Service Corporation, as an officer of that company he executed an assignment of one mortgage which transferred the entire interest therein to the Equitable Financial Corporation and failed to refer to any such agreement as he now says was then in existence.

The defendant could not, by the alleged agreement with Spielberg, become the owner of an interest in mortgages owned by a corporation to the extent of $12,500, the balance of his investment, and by such agreement provide for the sale of his stock to a corporation which had no interest in the transaction.

If no interest in the mortgages was transferred to the defendant, then the mortgages belong to the plaintiff, together with the installments of interest and principal paid thereon from time to time to the defendant, and the plaintiff is entitled to recover the amount collected less the sum of $2,000 which was evidently paid on account to the Equitable Financial Corporation by the defendant.

Aside from the legal questions involved, the proof of the oral contract is insufficient. The entire transaction is so improbable when the surrounding circumstances are considered that we are of the opinion that the oral agreement was not proved. The defendant paid over a part of the money so collected by him to the Equitable Financial Company, not to Spielberg. Would he have paid over part of the money collected if there was any such agreement? He says it was a loan to Spielberg, who denied there was such a loan and points to the fact that it is not likely that he needed a loan of $2,000 when at that time he had placed $1,200,000 in cash in the corporation. The checks in payment of the $2,000, each for $1,000, are not made to Spielberg, but to the Equitable Financial Corporation, then entitled to the interest. Spielberg says he not only never made any such loan but never heard of any such agreement and he is the party with whom the defendant says the agreement was made. Such an agreement could not make the corporation liable.

In addition to the fact that the defendant failed to prove a valid transfer to him of any interest in the mortgage, we have reached the conclusion that no binding agreement was shown to have been made with the corporate owner warranting the retention by the defendant of the moneys paid as interest or principal upon

the mortgages in question and that there should be judgment for the plaintiff.

Viewing the alleged transaction in the most favorable light to the defendant, he is not entitled to retain the money collected by him on the mortgages in question, for the reason that title to the same was at all times in the owner of the mortgages.

The plaintiff is, therefore, entitled to judgment for the sum collected by the defendant less the $2,000 paid over to the owner of the mortgages.

The judgment appealed from should be reversed, with costs, and judgment entered in favor of the plaintiff for $5,825, with costs.

FINCH, P. J., MERRELL and UNTERMYER, JJ., concur; O'MALLEY, J., concurs in result.

Judgment reversed, with costs, and judgment directed in favor of the plaintiff for $5,825, with interest and costs. Settle order on notice.